IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERUBY ABREGO, | ) | |
| | ) | No. 23 CV 1740 |
| *Plaintiff*, | ) | |
| v. | ) | Hon. Steven C. Seeger, |
| REYNALDO GUEVARA, *et al.*, | ) | District Judge |
| | ) | |
| *Defendants.* | ) | Hon. Gabriel A. Fuentes |
| | ) | Magistrate Judge |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| JEREMIAH CAIN, | ) | No. 23 CV 14282 |
| | ) | |
| *Plaintiff*, | ) | Hon. Steven C. Seeger, |
| v. | ) | District Judge |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | Hon. Gabriel A. Fuentes |
| *Defendants.* | ) | Magistrate Judge |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL
<u>DEFENDANTS TO COMPLY WITH DISCOVERY OBLIGATIONS</u>**

Plaintiff, Eruby Abrego, by and through his counsel, Loevy + Loevy, moves to compel discovery from Defendant City of Chicago ("City") and the Defendant Officers Anthony Wojcik, Daniel Engel, Jerome Bugocki, Ray Shalk, Geri Yanow, as special administrator of the Estate of Ernest Halvorsen, and Kevin Rogers, as special representative of the Estate of Frank Cappitelli, pursuant to Federal Rule of Civil Procedure 37. In support of this motion, Plaintiff states as follows:

## Introduction

With discovery ending, Plaintiff files this motion to compel simply asking the Court to order Defendants to provide discovery they owe. Plaintiff makes four specific requests in this motion: for the Court to (1) order Defendant Officers Wojcik and Rogers to serve responses to Plaintiff's interrogatories—responses that are overdue and their counsel has already agreed to provide; (2) order the City to produce medical records and a "fulsome" letter from a physician pertaining to third-party witness and polygraph examiner Robert Tovar's condition consistent with the Court's previous directive that the City provide specific information from a physician about Tovar's ability to sit for a deposition; (3) order Defendants to comply with the Federal Rules and supplement their contention interrogatory responses before the close of discovery Defendants; and (4) order the City to produce relevant arrest records for key third-party witnesses and IR jackets for non-law enforcement and non-attorney third parties who were involved in the Garcia murder investigation. Each of these uncontroversial requests seeks information that Plaintiff is entitled to under the Federal Rules, and so Plaintiff's motion to compel should be granted.

2

**Argument**

I. **The Court Should Order Defendant Officer Rogers and Wojcik to Answer Plaintiff's First Set of Interrogatories to All Defendants.**

On May 13, 2025, Plaintiff served a set of interrogatories on all Defendants. Under Federal Rule of Civil Procedure 33, Defendants responses were due on June 12, 2025. Fed. R. Civ. P. 30(b)(2). While the other Defendants served responses, Defendants Wojcik and Rogers have yet to serve their answers despite their counsel's agreement to provide them. Ex. A (Email from Fleming, July 24, 2025). Plaintiff followed up with Defendants Wojcik and Rogers on July 17, July 24, July 31, August 18, and August 22. Defendants Wojcik and Rogers have still not provided sworn responses. Plaintiff now moves this Court to order Defendants Wojcik and Rogers to serve responses by August 29, 2025.

II. **The Court Should Order the City to Produce Medical Records about Tovar's Condition.**

After multiple rounds of conferrals, on July 3, 2025, Plaintiff moved to compel the deposition of third-party witness and polygraph examiner Robert Tovar. Doc. 216. At that point, the City had refused to produce Tovar due to health concerns. Doc. 214. In support of their position, the City provided a cursory letter from a doctor that claimed, without any meaningful detail, that Tovar was unable to testify in any legal proceeding. *Id*. In Plaintiff's motion, Plaintiff argued that this letter failed to satisfy the standard to prevent Plaintiff from obtaining oral discovery from Tovar. *See generally* Doc 216. Accordingly, Plaintiff requested that the Court compel the City to produce Tovar, as well as Tovar's medical records and doctor for examination so that Plaintiff could evaluate the accuracy of the doctor's conclusion that Tovar was unable to testify and to determine if accommodations could be made for Tovar's deposition. *Id.* at 7-10, 12.

3

At the hearing on Plaintiff's motion, the City, for the first time, provided details about Tovar's dementia diagnosis. *See generally* Ex. B (Hrg. Tr., July 9, 2025). The City represented that Tovar's nephew was willing to provide an affidavit and testify about Tovar's condition. *Id.* at 15:23-16:7. In response to the Court's observation that Tovar's physician's letter appeared insufficient, the City also stated that it hoped to get a "more fulsome letter from Dr. Byers about [Tovar's] condition that outline[d] some of the day-to-day struggles that he has and outline[d] more of the cognitive impairment…and specifics about the diagnosis of dementia" *Id.* at 8:4-7, 12-18. The City further represented that Dr. Byers was consulting the legal department about what kind of letter she could provide. *Id.* at 12:19-20. At the end of the hearing, the Court concluded that Dr. Byers' letter was insufficient and directed the City to provide information about "what progress [the City made] in figuring out what [Tovar's] condition really is; and would he be harmed; does the physician believe he would or could be harmed by being required to testify?" *Id.* at 23:7-13.

On August 18, 2025, Plaintiff and the City conferred about the City's production of information relating to Tovar's condition. At the conference, the City affirmed that it would produce an affidavit from Tovar's nephew but flatly refused to any of Tovar's medical records or a more detailed letter from any of Tovar's doctors. Ex. C (Confirming email, August 22, 2025). The City's unwillingness to provide updated information from a medical professional or any medical records both runs afoul of the Court's direction and the law.

The Court specifically directed the City to provide information about whether a physician believed Tovar would or could be harmed by being required to testify. The Court's instruction is consistent with the law which requires the resisting party to "make a *specific and documented showing that the deposition would be dangerous to the deponent's health.*" Stanek v. St. Charles

4

*Cmty. Unit Sch. Dist. 303*, 2020 WL 1304828, at *3 (N.D. Ill. Mar. 18, 2020) (emphasis original). "Conclusory or speculative statements about the harm that will be suffered—even if made by a treating physician—are insufficient to support entry of protective order barring an oral deposition." *Id.* (citing supporting cases). The resisting party must also show that no accommodation can be made to prevent the deponent from being harmed. *See Mendez v. City of Chicago*, No. 18 C 5560, 2021 WL 12318772, at *4 (N.D. Ill. Feb. 24, 2021) (magistrate judge imposing eight conditions for the deposition of witness with various developmental impairments); *Stanek*, 2020 WL 1304828, at *3 (limiting the duration of the deposition and imposing additional safeguards); *Qube Films Ltd. v. Padell*, No. 13-CV-8405 AJN, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (noting that absent a showing of "clearly defined and serious injury," courts can create accommodations to limit potential harm to the deponent).

There is no evidence that Tovar's nephew is qualified to make determinations about the potential harm to Tovar and what steps can be taken to mitigate any risks. The Court should thus order the City to produce Tovar's medical records and a "fulsome" letter from Tovar's physician(s) (1) detailing Tovar's diagnosis and abilities; (2) stating what harm, if any, Tovar would suffer from being deposed; and (3) what accommodations can be made to minimize the risk of harm.

### III. The Court Should Order Defendants to Supplement Their Contention Interrogatory Responses.

At the beginning of discovery, Plaintiff served interrogatories on Defendants. Defendants objected to certain of Plaintiff's interrogatories claiming that they were prematurely issued contention interrogatories. *See e.g.* Ex. D (Defendant Bogucki's Interrogatory Responses) at Interrogatory Nos. 5, 6, 17; Ex. E (City's Interrogatory Responses) at Interrogatory No. 1, 5, 6,

10, 14. Plaintiff filed a motion to compel Defendants to answer the contention interrogatories, arguing that Defendants had sufficient information to provide responses. *See* Doc. 148 at 3-11. The Court denied the motion without prejudice, with leave to renew if the parties could not come to an agreement about when to answer contention interrogatories. Doc. 154. Following the hearing, the parties initially agreed to supplement contention interrogatory responses 30 day before the close of non-*Monell* fact discovery. However, when the proposed discovery deadline of July 31, 2025 passed, (Doc. 186), and the Court's previewed its intent to close non-*Monell* fact discovery on August 29, 2025, Plaintiff asked Defendants to agree to supplement their responses by July 29, 2025. Ex. F (Letter from Plaintiff, July 17, 2025) at 1. Defendants ignored Plaintiff's repeated requests for agreement and to confer. Finally, Defendants agreed to confer about discovery last Monday and stated that they would not supplement their responses until 14 days after the close of non-*Monell* fact discovery. Ex. G (Letter from City, August 22, 2025); Ex. C (Confirming email from Spence, August 22, 2025).

"The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness." *See Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995). Discovery is set to close in a few days, thus the time for supplementation has come. Plaintiff respectfully moves this Court to compel Defendants to supplement their disclosures by Friday, August 29.

### IV. The Court Should Order the City to Produce Criminal Records Pertaining to Key Third-Party Witnesses.

Plaintiff served a request on the City to produce all document relating to third-party witnesses that appeared on any party's Rule 26(a)(1) disclosures. This request included arrest reports, IR jackets, criminal history reports, and photographs of any kind. Ex. H (Plaintiff's First

Request to Produce Documents to All Defendants) at Request No. 21. Plaintiff has repeatedly conferred about this request with the City, and has made multiple attempts to compromise to resolve the City's objections to this request. For example, Plaintiff narrowed his request to only cover witnesses non-law enforcement officer and non-attorneys on the parties' Rule 26(a)(1) disclosures—in essence, third parties who were identified by Defendant Officers during the Garcia murder investigation— and individuals who testified at Plaintiff's criminal proceedings. Ex. I (Letter from Plaintiff, Feb.20, 2025) at 3-4. Plaintiff also excluded pattern and *Monell* witnesses from this request. *Id.* Plaintiff also limited his request to the underlying arrest forms, IR jackets, and photographs for individuals who were placed in lineups during the Garcia murder investigation. *Id.* Further, to aid the City's search and in response to the City's request, Plaintiff specifically identified the individuals covered by his request. *Id.*

The City agreed to provide criminal histories but did not produce arrest reports, IR jackets, and photographs. Ex. J (Letter from City, Jan. 14, 2025) at 2-3; Ex. K (Letter from City, May 21, 2025) at 3-4. The City then requested that Plaintiff comb through any criminal histories it produced and specifically identify which arrest records Plaintiff wanted. Ex. J (Letter from City, Jan. 14, 2025) at 2-3; Ex. K (Letter from City, May 21, 2025) at 3-4. Plaintiff responded by asking the City to produce arrest records based on a specific timeframe. Ex. L (Email from Plaintiff, March 11, 2025) at 2. The City rejected this proposal and again demanded that Plaintiff identify specific arrests. Ex. K (Letter from City, May 21, 2025) at 3-4. Plaintiff did so. Ex. F (Letter from Plaintiff, July 17, 2025) at 2-6. Now, the City has objected to Plaintiff's request on the basis that Plaintiff has identified too many arrests. Ex. G (Letter from City, Aug. 22, 2025) at 6-7. The City's new proposal is to limit arrest record by timeframe—only producing arrest forms from 1998 through 2000. *Id.* The City also raised an objection to producing IR jackets arguing

7

that Plaintiff identified too many people which made Plaintiff's request disproportionate to the needs of the case. *Id.* The parties have reached an impasse.

      *a. The City Should Produce Requested Arrest Records for Lugo, Torres, Quinones, Vasquez, and Marrero.*

The City should produce requested arrest forms for key witnesses Julio Lugo, Ramon Torres, Isidro Quinones, Fred Marrero, and Antonio Vasquez. Plaintiff addresses the relevance and proportionality of each request in turn.

The arrest histories for Julio Lugo, Ramon Torres, Fred Marrero, and Isidro Quinones—all of whom were eyewitness to the Garcia murder and implicated Plaintiff in the crime—are relevant to prove bias and may contain information to support Plaintiff's allegations that Defendant Officers compelled the witnesses to falsely identify Plaintiff. As to bias, Defendant Officers and prosecutors argued that the motive for the shooting was due to a gang rivalry—i.e. Plaintiff and the witnesses and victims were in rival gangs. Throughout the Garcia investigation, Marrero denied any gang affiliation, at Plaintiff's trial, Torres denied any continued affiliation with a gang, and Quinones was presumed to have no gang affiliation due to his young age at the time of the murder. Where officers believe that a suspect is affiliated with a certain gang at the time of their arrest, this information is typically reflected on an arrest form. Plaintiff therefore is seeking arrest forms tied to arrests related to drugs or violence (crimes likely to be associated with gang membership) to obtain potential information about gang affiliation. Ex. F (Letter from Plaintiff, July 17, 2025) at 2-6 (listing relevant arrests). This is particularly true in the case of Quinones whose gang ties may be documented in his adult criminal records, which would post-date Plaintiff's 2004 conviction.

8

Further, to the extent arrest forms reveal that Defendants Officers were involved in arrests of the witnesses between the year the murder occurred in 1999, and when Plaintiff was convicted in 2004, these arrest forms may lead to admissible evidence to support the theory that Defendant Officers kept tabs on the witnesses to ensure that witnesses would testify consistent with Defendants' fabricated identifications at Plaintiff's trial. In fact, Lugo averred in his affidavit that a police officer told him who allegedly committed the crime, and then in 2004, after never previously identifying Plaintiff as the shooter, Lugo made an in-court identification of Plaintiff as the shooter during trial. Ex. M (Affidavit) at ¶¶ 6-8; Ex. N (Lineup Report) (Lugo makes no identification); Ex. O (Lugo Trial Testimony) at A-43:9-22.

Finally, Torres' arrest history from the 1980s is significant because Torres identified Defendant Guevara as the individual who instructed him to identify Plaintiff as the shooter during the Garcia murder investigation. Ex. P (Torres Post-Conviction Testimony) at 6-7,10-11. During Plaintiff's post-conviction hearing, Torres testified that the Garcia murder investigation was not the first time Guevara had induced Torres to help frame an innocent individual. Torres testified that Guevara consistently compelled him to help frame innocent people in the 1980s. *Id.* at 43-44. The arrest forms in the 1980s may reveal prior contact with Guevara.

With regard to Antonio Vasquez, after Plaintiff was wrongfully arrested and charged with the Garcia murder, Vasquez was arrested, interrogated, and gave a statement falsely identifying Plaintiff as being involved in procuring the murder weapon. Ex. Q (Vasquez Statement). Vasquez also falsely testified to the same at Plaintiff's trial. Plaintiff alleges that Defendant Officers induced Vasquez into falsely identifying Plaintiff. Vasquez was a vulnerable witness given his ongoing drug addiction. *Id.* (admitting to committing a crime in exchange for drugs). Arrest forms that demonstrate that Defendant Officers may have had prior contact with Vasquez,

9

and/or contact with shortly after he falsely testified against Plaintiff could support Plaintiff's fabrication theory.

As such, Plaintiff requests the Court order the City to produce the arrest records identified in Plaintiff's letter for Julio Lugo, Isidro Quinones, Ramon Torres, Antonio Vasquez, and Fred Marrero.

> b. *The City Should Produce Existing IR jackets for Identified Third-Party Witnesses*

The City should also be compelled to produce IR jackets for third party witnesses who were identified during the Garcia murder investigation. IR jackets are a set of documents that typically comprised of fingerprint records, dates of last photos, and requests for criminal history logs. *See e.g.* Ex. R (IR Jacket for Abrego). The logs bear special importance here. The criminal history logs are typically requested when an officer is investigating a particular individual. The request logs reflect, *inter alia*, the date a person's criminal history was request and the identity of the requesting officer. *See id.* at RFC-Abrego 328. This can be pertinent information in wrongful conviction cases, as the logs can reveal when a Defendant Officer learned about a witness and began investigating a third-party. For example, where a request log shows that an investigating officer began looking into an individual before any evidence tied that person to the crime, this could lead to an inference the officer was targeting that person and may support theories related to fabrication of false evidence. Accordingly, IR jackets for Garcia murder investigation third-party witnesses meet the broad definition of relevance under Rule 26. Where the City objects on the basis of burden, this objection is undermined by their admission that multiple individuals on Plaintiff's list do not have criminal histories. Ex. G (Letter from City, Aug. 22, 2025) at 6-7. Given the City's representation, Plaintiff request only relates to a couple handful of individuals,

10

which is not an unduly burdensome search request. The Court should order the IR jackets for third-party witnesses with criminal histories to be produced.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully moves this Court to: (1) order Defendant Officers Wojcik and Rogers to serve responses to Plaintiff's interrogatories—responses that are overdue and their counsel has already agreed to provide; (2) order the City to produce medical records and a "fulsome" letter from a physician pertaining to third-party witness and polygraph examiner Robert Tovar's condition consistent with the Court's previous directive that the City provide specific information from a physician about Tovar's ability to sit for a deposition; (3) order Defendants to comply with the Federal Rules and supplement their contention interrogatory responses before the close of discovery Defendants; and (4) order the City to produce relevant arrest records for key third-party witnesses and IR jackets for non-law enforcement and non-attorney third parties who were involved in the Garcia murder investigation.

/s/ Renee Spence
Attorney for Plaintiff Eruby Abrego

Jon Loevy
Anand Swaminathan
Steve Art
Renee Spence
Justin Hill
Madison Irene
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
spence@loevy.com