# LOEVY + LOEVY

July 17, 2025

311 N. Aberdeen Street
Chicago, Illinois 60607
(312) 243-5900
www.loevy.com

**VIA EMAIL**

Counsel for the City of Chicago
Theresa Carney
Rock Fusco & Connelly LLC
333 West Wacker Drive 19th Fl.
Chicago, IL 60606

Counsel for Defendant Guevara
Andrea Fabian-Checkai
Borkan and Scahill Ltd
20 S Clark St Ste 1700
Chicago, IL 60603

Counsel for Officer Defendants
Elizabeth Fleming
The Sotos Law Firm, P.C
141 W Jackson Blvd. Ste 1240A
Chicago, IL 60604

**RE:** *Abrego v. Guevara, et al,* No. 23 CV 1740 – Outstanding Discovery

Counsel,

I am writing to follow up on the outstanding discovery from Defendants. They are as follows:

**I.    Contention Interrogatories**

The parties agreed to supplement contention interrogatories 30 days before the close of discovery. The plan was for the parties to serve supplemented responses by June 30, 2025. In light of Judge Fuentes' representation that he will be recommending to Judge Seeger to set the non-*Monell* fact discovery deadline for August 29, 2025, Plaintiff proposes that the parties agree to serve supplemented interrogatory responses by July 29, 2025. Please let Plaintiff know if Defendants agree to this proposal. If we cannot agree to a deadline, Plaintiff will raise the issue with the Court.

**II.    Officer Defendants' Interrogatory Responses**

On May 13, 2025, Plaintiff served interrogatories on all Defendants. It does not appear that Officer Defendants served responses. If responses were served and Plaintiff missed them, please let Plaintiff know when the responses were sent. If no responses were served, Officer Defendants' responses are two months overdue. Please serve your responses by Thursday, July 24, 2025.

### III.   The City's Discovery Responses

I am following up on the issues raised in our May conference which was memorialized in an email from Plaintiff on May 16, 2025 and in the City's written response on May 21, 2025.

**Rule 30(b)(6) (changes in Topics 1-13)** – Plaintiff did what the City asked and identified relevant policies in RFC Abrego 9478-9501. The City produced some additional documents but did not address Plaintiff's question about whether its polices changed in between 1999 and 2000 for Topics 1-13, nor did the City address Plaintiff's note that many of the policies identified in RFC 9478-9501 are unresponsive to the subtopics identified in Interrogatory No. 14. They are also largely unresponsive to Topics 1-13 in Plaintiff's Rule 30(b)(6) notice. As such, the City has still not answered Plaintiff's question. Please provide a response by Thursday, July 24, 2025.

**Interrogatory Nos. 10, 11** – The City agreed to formally supplement its response by June 30, the deadline the parties agreed to for supplementation of answers to contention interrogatories. The City has not provided any response. Please advise if the City will agree to supplement its response by July 29, 2025, as proposed in Section (I) of this letter.

**Interrogatory No. 14** – Plaintiff has conferred with the City multiple times about this interrogatory and the City agreed to provide policies for all topics except (i) and (j). Plaintiff also requested training materials, particularly if the City was going to contend that Defendants were trained on the topics listed in Interrogatory No. 14. As with the Rule 30(b)(6) issue, Plaintiff complied with the City's request to identify responsive policies in RFC Abrego 9478-9501 and also highlighted that many of the topics in this section of the production did not relate to the topics listed in Interrogatory No. 14. Has the City produce all the policies and training the City intends to rely on to support a defense that it had certain policies in place during the Garcia Murder Investigation and that Defendants had been trained on those policies? If not, please complete this production by Thursday, July 24, 2025.

**Area 5 Mission Team, Overtime Requests, and Beat Officers** – In it's May 21, 2025 letter the City said it would provide a response about the existence of responsive documents. Plaintiff followed up again on June 4 and asked for an update. No update was provided. Please produce responsive documents by Thursday, July 24, 2025. If the City does not, Plaintiff will presume we are at an impasse on this topic.

**Documents relating to third parties** – As with the above-described topics, Plaintiff repeatedly conferred with the City to get the City to comply with its discovery obligation to produce documents responsive to Plaintiff's discovery requests. Plaintiff has had to write out each and every name of the witnesses requested, despite the City having equal access to the information. Plaintiff has had to repeatedly follow up with the City to get updates about the documents. At each turn, the City has failed to produce a complete set of responsive documents. Now the City is refusing to produce arrest forms despite Plaintiff providing a narrow timeline. In an effort to get this issue resolved, Plaintiff is making yet another one-sided attempt to meet the City halfway. As the City requested, Plaintiff has listed the arrest dates for individuals whose criminal histories have been produced. Please produce the attendant arrest forms.

- Julio Lugo
    - Nov. 11, 2007

- Jan. 6, 2004
- July 11, 2003
- Sept 3, 1998
- Nov. 9, 1997
- June 1, 1997
- Aug. 11, 1996
- July 9, 1996
- July 14, 1995
- Isidro Quinones
    - June 8, 2024
    - Mar. 25, 2007
    - Mar. 28, 2006
    - Feb. 9, 2006
    - Oct. 31, 2005
    - Sept. 27, 2005
- Ramon Torres
    - Nov. 1, 2006
    - July 1, 2006
    - Apr. 4, 2006
    - Mar. 11, 2005
    - Oct. 7, 2003
    - Dec. 29, 2002
    - Apr. 22, 2002
    - Feb. 28, 2002
    - Nov. 7, 2001
    - Jan. 5, 2000
    - Jan. 17, 1997
    - Sept. 21, 1995
    - July 26, 1990
    - Dec. 16, 1989
    - Aug. 5, 1989
    - Feb. 20, 1989
    - Aug. 19, 1988
    - Aug. 6, 1988
    - May 25, 1988
    - Jan. 30, 1988
    - Jan. 6, 1988
    - Dec. 30, 1987
    - Aug 27, 1986
    - June 17, 1986
- Antonio Vasquez
    - Nov 16, 2008
    - Mar. 20, 2005
    - July 31, 2002
    - Nov. 28, 1998
    - Oct. 6, 1998

- 
  - 
    - July 23, 1987
    - Oct. 14, 1985
  - Frederico Marrero
    - May 12, 1999
    - July 12, 1997
    - July 14, 1995
    - Sept. 28, 1994
    - Dec. 13, 1991
  - Juan Parra
    - Aug. 24, 2006
    - June 22, 2006
    - Jan. 28, 2006
    - Dec. 14, 2005
    - Sept. 8, 2002
    - Oct. 5, 1996
  - Armando Rentas
    - July 7, 1995
    - Oct. 5, 1990
    - Aug. 8, 1990
    - Nov. 8, 1989
    - March 21, 1989
    - July 11, 1987
    - May 21, 1987
    - Feb. 7 1987
    - Oct. 23, 1986
    - Aug. 21, 1986
    - May 23, 1986
    - Dec. 30, 1985

The City's May 21 letter stated that the City was still looking for responsive documents for the following individuals:

- Elizabeth Montalvo
- Carmen Garcia
- Maria Arreloa
- Adid Khauis
- Martha Mora
- Alex Guzman
- Albert Antuna
- Angelo Martinez
- Jose Garcia
- Manuel Carmona
- Ruben DeLuna
- Salvador Alvarez
- Roger Sommarreba
- Ramiro Alvarez

Plaintiff has been waiting for an update for almost two months. Please produce responsive documents as to these individuals by Thursday, July 24, 2025.

Finally, Plaintiff has also requested IR jackets for each of the 38 individuals. It appears the City has only produced IR jackets for Plaintiff and Armando Rentas. Please produce the IR jackets for the remaining 37 individuals as well as any IR jackets relating to Jeremiah Cain.

**Tovar Documents** – During the July 9, 2025, hearing on Plaintiff's motion to compel, the City represented that it was going to produce documents to support it representation that Tovar is too ill to sit for a deposition. Please provide a timeframe for when Plaintiff can expect the City to produce supporting documentation.

**Rule 30(b)(6) (polygraph)** – Plaintiff's Rule 30(b)(6) notice included a topic regarding policies and training on the conduct, documentation, and supervision of polygraph testing on witnesses and suspects during homicide investigations. (Topic 1(*l*), Topic 2(m)). During a March 2025 conferral with Eileen and Kelly, Plaintiff narrowed the timeframe for this topic to 1994-2000 (this timeframe also covered *Gonzalez*). The City expressed that it was not concerned about testimony before 1999 because prior testimony would cover the earlier timeframe, but would not agree at this time that 1999-2000 was a relevant timeframe. Plaintiff and the City agreed to table this disagreement about the 1999-2000 years until the Court gave us permission to conduct *Monell* discovery. Given the City's position on Tovar, Plaintiff is re-raising this issue and proposing that City produce a witness to testify about Topic 1(*l*) and Topic 2(m) during the non-*Monell* fact discovery phase. Plaintiff is also asking the City to identify the prior testimony it plans to rely on for these topics for the 1994-1998 timeframe.

**Depositions date for Jaks and Rios** – During our June 13, 2025 meet and confer the City agreed to provide dates for Plaintiff to depose Officers Rios and Jaks. The City has not provided any dates. Please provide August dates for Plaintiff to complete these depositions. Alternatively, Plaintiff is willing to stipulate to certain facts in lieu of deposing Jaks and Rios. The proposed stipulations are as follows:

- **Stipulation for Thesodia Jaks:** The parties stipulate that in lieu of calling Officer Thesodia Jaks to testify at the civil trial or deposition in *Abrego v. Guevara et al.*, 23-cv-01740 (N.D.Ill.), the parties will rely on Officer Jaks' January 17, 2003 testimony in the matter *People of the State of Illinois v. Eruby Abrego*, Case No. 99 CR 9739, wherein Officer Jaks testified that she was investigating a homicide on March 22, 1999 and she or her partner interviewed various witnesses including Ramon Torres and Julio Lugo. She also received a description of the shooter that day. The description she received described the shooter as male, dark Hispanic in a brown sweatsuit—a hoody, 5'7", 200 pounds, with curly and dark hair, heavyset with a mustache. The parties agree not to raise objections to the admissibility of this testimony.

- **Stipulation for Eduardo Rios:** The parties stipulate that in lieu of calling Officer Eduardo Rios to testify at the civil trial or deposition in *Abrego v. Guevara et al.*, 23-cv-01740 (N.D.Ill.), the parties will rely on Officer Rios' September 20, 2004 testimony in the matter *People of the State of Illinois v. Eruby Abrego*, Case No. 99 CR 9739, wherein Officer Rios testified that on March 22, 1999, Officer Rios was

> assigned to protect the crime scene on March 22, 1999 as part of the Jose Garcia homicide investigation. Office Rios went to the crime scenes located at Milwaukee and Belmont and 2159 North Monticello. Officer Rios received a description of the shooter. The description described the shooter as wearing a black hoodie with black jacket, a male Hispanic, 19 to 22 years old, 5'9" with black hair and dark complexion. The parties agree not to raise objections to the admissibility of this testimony.

I have attached the referenced testimony to this letter as Exhibits A and B.

I am available to confer about these topics this week and next week.

Sincerely,

Renee Spence

```
 1  STATE OF ILLINOIS  )
                       )
 2  COUNTY OF C O O K  )

 3         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
    THE PEOPLE OF THE      )
 5  STATE OF ILLINOIS      )
                           )
 6                         )  Indictment No. 99-9739
              -vs-         )  Charge:  Murder
 7                         )
    ERUBY ABREGO           )
 8                         )

 9         REPORT OF PROCEEDINGS had at the hearing of

10  the above-entitled cause, before the Honorable KENNETH

11  J. WADAS, Judge of said Court, on the 17th day of

12  January, A. D., 2003.

13
         APPEARANCES:
14
           HONORABLE RICHARD E. DEVINE,
15            State's Attorney of Cook County, by:
           MS. CATHERINE HUFFORD,
16            Assistant State's Attorney,
              appeared  on behalf of the People;
17
           MR. JASON EPSTEIN,
18            Assistant Public Defender,
              appeared on behalf of the Defendant.
19                     ***********

20  MS. BARBARA J. KIMBROUGH, CSR
    Official Court Reporter
21  2650 South California
    Room 4 C 02
22  Chicago, Illinois 60608

23

24
```

WW-1

Abrego 015585

```
 1          THE COURT:  You can step down, Detective.
 2    Thank you.
 3                (Witness excused)
 4          MR. EPSTEIN:  At this time, Judge, we intend
 5    to call Officer Jaks to the stand.
 6                (Witness sworn)
 7          THE COURT:  Have a seat.
 8                THESEDODIA JAKS,
 9    called as a witness on behalf of the
10    Defendant-Petitioner herein, having been first duly
11    sworn, was examined and testified as follows:
12                DIRECT EXAMINATION
13                BY
14                MR. EPSTEIN:
15       Q    Officer, if you could please tell the Judge
16    your name and your occupation?
17       A    My name is Thesedosia Jaks.  I'm a police
18    officer with the Chicago Police Department.
19          THE COURT:  How do you spell your last name?
20          THE WITNESS:  J-a-k-s.
21    BY MR. EPSTEIN:
22       Q    Ma'am, I'm going to direct your attention to
23    March 22, 1999:  Were you investigating a homicide?
24    Do you recall that?
```

1  A  Yes.
2  Q  And in that homicide, you interviewed various
3  individuals?
4  A  Yes.
5  Q  If you could tell the Judge the description
6  of the shooter that you received on that day.
7     MS. HUFFORD:  Objection, Judge.
8     THE COURT:  Sustained.
9  BY MR. EPSTEIN:
10 Q  Did you -- who did you interview, if you
11 recall, or did you interview a Ramon Torres?
12 A  I don't recall.
13 Q  Julio Lugo?
14 A  I don't recall.
15 Q  Would your report refresh your recollection?
16 A  Possibly.
17 Q  Handing you what is referred to as Defense
18 Exhibit Two, do you recognize that?
19 A  Yes, I do.
20 Q  And is your signature on the bottom of that?
21 A  Yes, it is.
22 Q  Is that your police report?
23 A  Yes, it is.
24 Q  If could you review that to refresh your

```
 1  memory regarding the interviews you had?
 2                   (Brief pause)
 3  BY MR. EPSTEIN:
 4      Q    Now having looked at it, do you recall if you
 5  interviewed a Ramon Torres and Julio Lugo?
 6      A    I really can't say if it was me or my partner
 7  by reading it, no.
 8      Q    And you did sign this, right?
 9      A    Yes.
10      Q    And you put your name down as the reporting
11  officer?
12      A    Correct.
13      Q    In your investigation, did you get a
14  description of a person who was alleged to be the
15  shooter?
16      A    Yes.
17      Q    What was that description?
18      A    If I'm not mistaken, it was a male, dark
19  Hispanic in a brown sweat suit.
20      Q    Was there anything else about the sweat suit?
21      A    As I read it so far, I really --
22      Q    It had "a hoody," right?
23      A    If it is on the report, that's what they told
24  me.
```

```
 1          MR. EPSTEIN:  Judge, may I approach the
 2   witness again?
 3                    (Brief pause)
 4   BY MR. EPSTEIN:
 5       Q    Did the sweat suit have a hoody?
 6       A    Yes.
 7       Q    And did you tell me the height?
 8       A    Did you say that just now?  Did I miss that?
 9       Q    What was the height of the person described?
10            MS. HUFFORD:  Judge, we would stipulate that
11   the height is five foot seven, the weight is 200
12   pounds and the hair is curly and dark.
13            Do you want to stipulate to that?
14            MS. HUFFORD:  Yes
15            THE COURT:  Stipulation to curly and dark
16   hair.
17            MR. BYRNE:  And heavyset with mustache, and
18   the last thing was male Hispanic.
19            MR. EPSTEIN:  No further questions.
20            THE COURT:  Cross.
21            MS. HUFFORD:  Just one question:
22
23
24
```

WW-32

```
1                    CROSS-EXAMINATION
2                    BY
3                    MS. HUFFORD:
4      Q    You and your partner interviewed the
5 witnesses as well as all the other officers on the
6 scene doing the canvass report, correct?
7      A    Correct.
8      Q    This is a summary of what you learned at that
9 scene, correct?
10     A    Correct.
11          MS. HUFFORD:  Thank you.
12          THE COURT:  Redirect.
13          MR. EPSTEIN:  Nothing further, Judge, based
14 on that.
15          THE COURT:  You can step down, Officer.
16 Thank you.
17                    (Witness excused)
18          MR. EPSTEIN:  I call Officer Rios to the
19 stand.
20                    (WHEREUPON, the witness was duly
21                     sworn)
```

WW-33

Abrego 015616

```
 1   STATE OF ILLINOIS)
                     ) SS
 2   COUNTY OF C O O K)

 3      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
     THE PEOPLE OF THE      )
 5   STATE OF ILLINOIS,     )
                            )
 6         Plaintiff,       )
                            )
 7         vs.              )  Case No. 99 CR 9739
                            )  Charge: Murder
 8   ERUBY ABREGO,          )
                            )
 9         Defendant.       )

10           EXCERPT OF PROCEEDINGS had at the JURY

11   TRIAL had before the Honorable KENNETH J. WADAS, one

12   of the judges of said court, on the 20th day of

13   September, 2004.

14

15   APPEARANCES:

16         HON. RICHARD DEVINE, State's Attorney
           of Cook County, by:
17         MR. RAYMOND REGNER and
           MR. MICHAEL HOOD,
18         Assistant State's Attorneys,
           on behalf of the People;
19
           MR. JASON EPSTEIN,
20         on behalf of the Defendant.

21

22

     Dorothy M. Nagle, CSR, RPR
23   Official Court Reporter
     Criminal Division
24   CSR #-084-003564.
```

Abrego 016384

```
1         THE COURT:  Bring out the jury.
2                  (Whereupon, the following
3                   proceedings were had in the
4                   presence and hearing of the jury.)
5         THE COURT:  Call your next witness.
6         MR. EPSTEIN:  At this time we call Officer
7    Rios to the stand.
8         THE COURT:  Come right up here, officer.
9                  (Witness sworn.)
10
11              OFFICER EDWARDO RIOS,
12   called as a witness on behalf of the defendant,
13   having been first duly sworn, was examined and
14   testified as follows:
15
16              DIRECT EXAMINATION
17   BY MR. EPSTEIN:
18        Q.  Officer, could you please state your name
19   for the record?
20        A.  Police Officer Edwardo Rios, star 10253,
21   17th District.
22        Q.  Officer, how are you employed?
23        A.  By the city of Chicago as a police officer.
24        Q.  How long have you been a Chicago police
```

211-ZZZ

Abrego 016591



```
 1   officer?
 2        A.   Over 12 years -- almost 12 years.
 3        Q.   Officer, I want to direct your attention to
 4   March 22nd, 1999 at approximately 1748 hours.  What
 5   time is that in no-military time?
 6        A.   You're putting me on the spot.  5:48 p.m.
 7        Q.   I do that because I can't do that in my
 8   head, so I figure I will shift it to you.
 9             Officer, what was your relation to the
10   homicide investigation of Jose Garcia, do you
11   recall?
12        A.   I was protecting a crime scene, one of two
13   time scenes.
14        Q.   Approximately, what time did you arrive,
15   you said 1748, is that your time of arrival?
16        A.   Yeah, I would say so.  It wouldn't be the
17   time of arrival at the second time scene.  The time
18   of arrival of the incident.
19        Q.   So of course when you were there, there was
20   quite a few people gathered around and obviously
21   somewhat of a --
22        A.   Yes.
23        Q.   Officer, at that time, did you take a
24   description of the shooter that had a black hoodie,
```



212-ZZZ



```
 1   with black jacket, 5'9", black hair, dark
 2   complexioned, male Hispanic, approximately 19 to 22
 3   years of age?
 4          MR. REGNER:  Objection as to leading and
 5   foundation as to which scene.
 6          THE COURT:  Sustained.
 7   BY MR. EPSTEIN:
 8      Q.  Officer, you did say the first scene you
 9   were at, right?
10      A.  Yes.
11      Q.  Did you, in fact, take a description of an
12   individual that somebody gave you as to what the
13   shooter looked like?
14          MR. REGNER:  Objection, which scene.
15          THE COURT:  Sustained.  Foundation.
16   BY MR. EPSTEIN:
17      Q.  Which scene was this at?
18      A.  What scene was what at?
19      Q.  Which scene did you go to first, what crime
20   scene?
21      A.  The one on Milwaukee and Belmont.
22      Q.  And after that, where did you go?
23      A.  Monticello and Belmont.
24      Q.  So you were at one of those two crime
```



213-ZZZ

Abrego 016593

```
 1    scenes.  Actually, you were assigned to protect the
 2    crime scene at 3159 North Monticello, right?
 3         A.   Correct.
 4         Q.   So your time on Milwaukee was short.  And
 5    ultimately, you sat on the crime scene at 3159 North
 6    Monticello, right?
 7         A.   I ultimately sat at the crime scene at 3159
 8    North Monticello.
 9         Q.   During that time that you were sitting on
10    that crime scene, were you able to take a
11    description of somebody?
12         A.   No.
13         Q.   You took no description of anybody that was
14    there?
15         A.   No.
16              MR. EPSTEIN:  Your Honor, may I approach?
17              THE COURT:  Sure.
18              MR. REGNER:  Judge, exhibit number?
19    BY MR. EPSTEIN:
20         Q.   I'm handing you what's been marked as
21    Defense Exhibit No. 8.
22                   Could you take a look at that document
23    and tell me if you recognize that?
24         A.   Yes, I do.
```

214-ZZZ

Abrego 016594

```
 1        Q.   What is that?
 2        A.   It's a supplementary report.
 3        Q.   Your signature is on that?
 4        A.   Yes.
 5        Q.   You filled it out truthfully and accurately
 6   as to any details or facts you might had known?
 7        A.   Yes, to the best of my knowledge, yes.
 8        Q.   Sir, don't you include on that report a
 9   description of an offender?
10        A.   Yes.
11        Q.   Where did that description come from?
12        A.   It didn't come from the Monticello address.
13        Q.   Where did it come from?
14        A.   I either got it from my partner maybe or I
15   got it from other officers at the scene on
16   Milwaukee.
17        Q.   Sir, I guess the answer remains, in fact,
18   you took a description of an offender at that time
19   and day; is that right?
20             MR. REGNER:  Objection,
21   mischaracterization, argument.
22             THE COURT:  Sustained.
23   BY MR. EPSTEIN:
24        Q.   Sir, what was the description that you took
```

Abrego 016595



```
 1   from either your officers or on the scene on
 2   Milwaukee?
 3           MR. REGNER:  Objection.
 4           THE COURT:  Sustained.
 5           MR. EPSTEIN:  Basis, Judge?
 6           MR. REGNER:  Judge, leading
 7   mischaracterization of the evidence, foundation.
 8           THE COURT:  Sustained.
 9           MR. EPSTEIN:  What was the description?
10           THE COURT:  Ask your next question.
11   BY MR. EPSTEIN:
12       Q.  Sir, did you take a description that
13   differed than what Mr. Abrego looked like?
14           MR. REGNER:  Objection, your Honor, he
15   is --
16           THE COURT:  Sustained as to the form.
17   BY MR. EPSTEIN:
18       Q.  Sir, you just stated you took a description
19   from your officer, another officer, right?
20           MR. REGNER:  Objection.
21           THE COURT:  Sustained.
22   BY MR. EPSTEIN:
23       Q.  Sir, what did you say with respect to a
24   description that you received, you said you got it
```



216-ZZZ

```
 1   from an officer or somebody on the crime scene on
 2   Milwaukee, What were you talking about when you said
 3   that?
 4        A.   That I received information on the
 5   description of the offender, the information I have
 6   listed on there.
 7        Q.   What was that information?
 8        A.   Black hoodie, black jacket.  You know, what
 9   I have listed on the report, sir.
10        Q.   Would you like to see your report to
11   refresh your recollection?
12        A.   Sure.  Black hoodie with black jacket.
13        Q.   What was the rest of that information, sir?
14        A.   Male Hispanic, 19 to 22, 5'9", black hair,
15   dark complexion.
16             MR. EPSTEIN:  No further questions, Judge.
17             THE COURT:  Cross?
18             MR. REGNER:  Nothing.  Thank you.
19             THE COURT:  You could step down, officer.
20   Thank you.
21                  (Witness excused.)
22             MR. EPSTEIN:  Judge, at this time we call
23   Officer Jaks.
24                  (Witness sworn.)
```

217-ZZZ