# Exhibit G

LAW OFFICES
## ROCK FUSCO & CONNELLY, LLC

THERESA BEROUSEK CARNEY
DIRECT: 312-970-3472

333 WEST WACKER DRIVE
19TH FLOOR
CHICAGO, ILLINOIS 60606
(312) 494-1000
FAX (312) 494-1001
WWW.RFCLAW.COM

EMAIL:
TCARNEY@RFCLAW.COM

August 22, 2025

<u>**VIA ELECTRONIC MAIL**</u>
Renee Spence
Madison Irene
Loevy & Loevy
311 North Aberdeen Street
Chicago, Illinois 60607

    Re:    *Abrego v. Guevara, et. al.*
              City's Response to Plaintiff Abrego's July 17, 2025 37.2 Conference and subsequent meet and confer.

Counsel:

Please allow this to serve as the City's summary and response to the 37.2 Conference which occurred on August 18, 2025.

## I. Contention Interrogatories

The parties agreed to supplement contention interrogatories 30 days before the close of discovery. The plan was for the parties to serve supplemented responses by June 30, 2025. In light of Judge Fuentes' representation that he will be recommending to Judge Seeger to set the non-Monell fact discovery deadline for August 29, 2025, Plaintiff proposes that the parties agree to serve supplemented interrogatory responses by July 29, 2025. Please let Plaintiff know if Defendants agree to this proposal. If we cannot agree to a deadline, Plaintiff will raise the issue with the Court.

**<u>CITY'S RESPONSE:</u>** *In light of the recent referral to Judge Fuentes as well as the fact that neither of Plaintiffs' depositions have gone forward, it is the City Defendants' position that contention interrogatories should be answered 14 days after the close of non-Monell fact discovery and, if the Court does not grant the City Defendants' motion for extension of time, then 14 days after Plaintiffs' depositions have been completed.*

## II. Officer Defendants' Interrogatory Responses

        Defendant City provides no response to this section as it does not pertain to it.

Loevy & Loevy
August 22, 2025
Page 2 of 9

### III. The City's Discovery Responses

**Rule 30(b)(6) (changes in Topics 1-13)** – Plaintiff did what the City asked and identified relevant policies in RFC Abrego 9478-9501. The City produced some additional documents but did not address Plaintiff's question about whether its polices changed in between 1999 and 2000 for Topics 1-13, nor did the City address Plaintiff's note that many of the policies identified in RFC 9478-9501 are unresponsive to the subtopics identified in Interrogatory No. 14. They are also largely unresponsive to Topics 1-13 in Plaintiff's Rule 30(b)(6) notice. As such, the City has still not answered Plaintiff's question. Please provide a response by Thursday, July 24, 2025.

**CITY'S RESPONSE:** *Plaintiff Abrego is conflating 30(b) Topics, which the City has steadfastly maintained are not relevant because Judge Seeger bifurcated the Monell claims, with the City's Response to Interrogatory No, 14. The City has agreed to provide Plaintiffs with the relevant applicable directives, despite the fact that the Monell claim has been bifurcated, because the City understands that the directives are arguably discoverable for purposes other than Monell. Plaintiff Abrego raised at the August 18, 2025, zoom meet and confer that based on his review, there were still directives that had not been produced. The City indicated it would review the production and make sure that the relevant responsive directives were produced. The City has begun that review and will produce additional directives with this correspondence.*

**Interrogatory Nos. 10, 11** – The City agreed to formally supplement its response by June 30, the deadline the parties agreed to for supplementation of answers to contention interrogatories. The City has not provided any response. Please advise if the City will agree to supplement its response by July 29, 2025, as proposed in Section (I) of this letter.

**CITY'S RESPONSE:** *In regards to Interrogatory No.10, the City clarifies that it did not agree to formally supplement its response by June 30. In the City's May 21, 2025, correspondence, the City stated that it "does not agree to respond to Plaintiff's unidentified and currently unissued follow up discovery within three weeks." Moreover, based upon the proposal to answer contention interrogatories 14 days after the close of non-Monell fact discovery, or, if the Court denies Defendants' motion, 14 days after Plaintiffs' deposition are completed, the City proposes the same for Interrogatory Nos. 10 and 11.*

**Interrogatory No. 14** – Plaintiff has conferred with the City multiple times about this interrogatory and the City agreed to provide policies for all topics except (i) and (j). Plaintiff also requested training materials, particularly if the City was going to contend that Defendants were trained on the topics listed in Interrogatory No. 14. As with the Rule 30(b)(6) issue, Plaintiff complied with the City's request to identify responsive policies in RFC Abrego 9478-9501 and also highlighted that many of the topics in this section of the production did not relate to the topics listed in

Interrogatory No. 14. Has the City produce all the policies and training the City intends to rely on to support a defense that it had certain policies in place during the Garcia Murder Investigation and that Defendants had been trained on those policies? If not, please complete this production by Thursday, July 24, 2025.

**CITY'S RESPONSE:** *The City is making a supplemental production of additional written policies and training materials.*

**Area 5 Mission Team, Overtime Requests, and Beat Officers** – In it's May 21, 2025 letter the City said it would provide a response about the existence of responsive documents. Plaintiff followed up again on June 4 and asked for an update. No update was provided. Please produce responsive documents by Thursday, July 24, 2025. If the City does not, Plaintiff will presume we are at an impasse on this topic.

**CITY'S RESPONSE:** *As discussed during the meet and confer, the City does not have any responsive documents as it relates to Plaintiff Abrego's request for documents related to the Area 5 Mission Team. As it related to Plaintiff Abrego's request for "overtime," during the parties meet and confer Plaintiff Abrego clarified that he is seeking "overtime requests and records related to the Garcia murder investigation" for all police personnel listed on the closing supplementary report, which upon review, includes at least 21 different police personnel. Moreover, as explained during the conference, overtime records are not maintained based upon investigation, but would need to be requested based on each individual officer, requiring a search for records of at least 21 different police personnel. It is the City's position that this request is overly broad and unduly burdensome given the testimony in this case, which was that one specific officer said he would have worked overtime to complete a task. The City has requested that specific officer's overtime records, which are no longer maintained for the relevant time period. The City objects to producing overtime records for 21 additional police officers absent an explanation from Plaintiffs that explains how those records are relevant and proportional.*

**Documents relating to third parties** – As with the above-described topics, Plaintiff repeatedly conferred with the City to get the City to comply with its discovery obligation to produce documents responsive to Plaintiff's discovery requests. Plaintiff has had to write out each and every name of the witnesses requested, despite the City having equal access to the information. Plaintiff has had to repeatedly follow up with the City to get updates about the documents. At each turn, the City has failed to produce a complete set of responsive documents. Now the City is refusing to produce arrest forms despite Plaintiff providing a narrow timeline. In an effort to get this issue resolved, Plaintiff is making yet another one-sided attempt to meet the City halfway. As the City requested, Plaintiff has listed the arrest dates for individuals whose criminal histories have been produced. Please produce the attendant arrest forms.

- o Julio Lugo

- Nov. 11, 2007
- Jan. 6, 2004
- July 11, 2003
- Sept 3, 1998
- Nov. 9, 1997
- June 1, 1997
- Aug. 11, 1996
- July 9, 1996
- July 14, 1995
- Isidro Quinones
  - June 8, 2024
  - Mar. 25, 2007
  - Mar. 28, 2006
  - Feb. 9, 2006
  - Oct. 31, 2005
  - Sept. 27, 2005
- Ramon Torres
  - Nov. 1, 2006
  - July 1, 2006
  - Apr. 4, 2006
  - Mar. 11, 2005
  - Oct. 7, 2003
  - Dec. 29, 2002
  - Apr. 22, 2002
  - Feb. 28, 2002
  - Nov. 7, 2001
  - Jan. 5, 2000
  - Jan. 17, 1997
  - Sept. 21, 1995
  - July 26, 1990
  - Dec. 16, 1989
  - Aug. 5, 1989
  - Feb. 20, 1989
  - Aug. 19, 1988
  - Aug. 6, 1988
  - May 25, 1988
  - Jan. 30, 1988
  - Jan. 6, 1988
  - Dec. 30, 1987
  - Aug 27, 1986
  - June 17, 1986
- Antonio Vasquez
  - Nov 16, 2008
  - Mar. 20, 2005
  - July 31, 2002

- - - Nov. 28, 1998
    - Oct. 6, 1998
    - July 23, 1987
    - Oct. 14, 1985
  - Frederico Marrero
    - May 12, 1999
    - July 12, 1997
    - July 14, 1995
    - Sept. 28, 1994
    - Dec. 13, 1991
  - Juan Parra
    - Aug. 24, 2006
    - June 22, 2006
    - Jan. 28, 2006
    - Dec. 14, 2005
    - Sept. 8, 2002
    - Oct. 5, 1996
  - Armando Rentas
    - July 7, 1995
    - Oct. 5, 1990
    - Aug. 8, 1990
    - Nov. 8, 1989
    - March 21, 1989
    - July 11, 1987
    - May 21, 1987
    - Feb. 7 1987
    - Oct. 23, 1986
    - Aug. 21, 1986
    - May 23, 1986
    - Dec. 30, 1985

The City's May 21 letter stated that the City was still looking for responsive documents for the following individuals:

- Elizabeth Montalvo
- Carmen Garcia
- Maria Arreloa
- Adid Khauis
- Martha Mora
- Alex Guzman
- Albert Antuna
- Angelo Martinez
- Jose Garcia
- Manuel Carmona
- Ruben DeLuna

- - Salvador Alvarez
  - Roger Sommarreba
  - Ramiro Alvarez

Plaintiff has been waiting for an update for almost two months. Please produce responsive documents as to these individuals by Thursday, July 24, 2025.

Finally, Plaintiff has also requested IR jackets for each of the 38 individuals. It appears the City has only produced IR jackets for Plaintiff and Armando Rentas. Please produce the IR jackets for the remaining 37 individuals as well as any IR jackets relating to Jeremiah Cain.

**CITY'S RESPONSE:** *Plaintiff's characterization of the events that have occurred is inaccurate. As the City has articulated multiple times now, the agreement between our firms as it relates to this type of discovery has always been that the City agrees to provide the criminal histories of certain individuals identified by Plaintiff and Plaintiff then reviews those and makes specific requests for specific arrests. Plaintiff Abrego's July 17, 2025 correspondence was the first time Plaintiff Abrego provided the City with a list of specific arrests for which he requests records and, it appears, that Plaintiff Abrego has simply asked for* **all, or nearly all**, *the arrests for these individuals (i.e. Ramon Torres, Plaintiff Abrego requested arrest reports for all but 2 of his arrests; Frederico Marrero, Plaintiff requested all the arrest reports on his criminal history).*

*Plaintiff Abrego's request is unduly burdensome as it requests 69 total arrest records that span from 1985-2024, a time period of nearly 40 years. Specifically, Plaintiff Abrego states that the arrests that predate the Garcia murder investigation may be relevant to show purported gang affiliations or the lack thereof, but many of the arrests requested by Plaintiff pre-date the Garcia murder investigation by more than 10 years. It is unclear to the City how a timeframe encompassing almost 40 years is relevant to this case, and the basis articulated by Plaintiff Abrego is unconvincing. For example, please explain how a possession of cannabis charge from 1988, more than ten years before the Garcia Murder, is relevant and proportional to the needs of this case? Or, how is the issuance of a warrant in 2008 relevant and proportional to the needs of this case?*

*In an attempt to compromise, the City will agree to produce the arrest reports for the individuals listed in Plaintiff Abrego's July 17, 2025 Correspondence for arrests occurring between 1998 and 2000. Please let us know if Plaintiff Abrego agrees.*

*With respect to Plaintiff Abrego's request for 38 IR jackets, first, Plaintiff has failed to articulate why or how the IR jackets for the 38 individuals listed in Plaintiff Abrego's May 15, 2025 Correspondence are relevant and proportional to the needs of his case. In fact, as Plaintiff Abrego's counsel is undoubtedly aware, this request far exceeds any request by any other plaintiff in the Guevara-related cases for IR jackets. Further, as the City has discussed with Plaintiff Abrego's counsel on multiple occasions, the City stopped maintaining IR jackets between the time period of 2001-2002. Multiple witnesses identified by Plaintiff Abrego had their first adult arrest*

*after 2001, meaning there is no IR jacket to be produced (i.e. Gilberto Daniels (11/18/03), Martha Parra Mora (2/26/17), Nelson Pacheco (10/1/19)). Furthermore, to the extent that the witnesses identified by Plaintiff do not have an arrest history or one could not be located due to the identifiers provided, as detailed in the City's May 21, 2025 Correspondence, the City does not have IR jackets to be produce. Therefore, the City represents that it does not have IR jackets to produce for the following witnesses whom do not have criminal histories: Julia Haskis, Alex Gonzalez, Juan Diaz, Juan Avalos, Agustina Souello, Juan M, Parra Sr., Miriam Renates, Debra Daniels, David Daniels, and Frances Cain.*

*At this time, the only additional criminal histories that can be located are for Ruben DeLuna and Albert Antuna, which are being produced with this correspondence. The City is unable to locate criminal histories for the remaining persons identified in Plaintiff Abrego's May 15, 2025 Correspondence based upon the identifiers available.*

**Tovar Documents** – During the July 9, 2025, hearing on Plaintiff's motion to compel, the City represented that it was going to produce documents to support it representation that Tovar is too ill to sit for a deposition. Please provide a timeframe for when Plaintiff can expect the City to produce supporting documentation.

**CITY'S RESPONSE:** *The City is finalizing the affidavit from Mr. Tovar's nephew and will produce that no later than August 28, 2025.*

**Rule 30(b)(6) (polygraph)** – Plaintiff's Rule 30(b)(6) notice included a topic regarding policies and training on the conduct, documentation, and supervision of polygraph testing on witnesses and suspects during homicide investigations. (Topic 1(e), Topic 2(m)). During a March 2025 conferral with Eileen and Kelly, Plaintiff narrowed the timeframe for this topic to 1994-2000 (this timeframe also covered Gonzalez). The City expressed that it was not concerned about testimony before 1999 because prior testimony would cover the earlier timeframe, but would not agree at this time that 1999-2000 was a relevant timeframe. Plaintiff and the City agreed to table this disagreement about the 1999-2000 years until the Court gave us permission to conduct Monell discovery. Given the City's position on Tovar, Plaintiff is re-raising this issue and proposing that City produce a witness to testify about Topic 1(e) and Topic 2(m) during the non-Monell fact discovery phase. Plaintiff is also asking the City to identify the prior testimony it plans to rely on for these topics for the 1994-1998 timeframe.

**CITY'S RESPONSE:** *Our understanding, based upon the meet and confer, is that Plaintiff Abrego's reason for seeking a 30(b)(6) in non-Monell fact discovery is because Mr. Tovar is unable to give testimony about the polygraph that he conducted in this case. Therefore, Plaintiff Abrego stated that a 30(b)(6) deposition is required so Plaintiff Abrego can inquire about the policies and procedures surrounding polygraph examinations (i.e., how much sleep a person must have before submitting to a polygraph examination; what procedures were in place when a person submitting*

*to a polygraph does not speak English; whether or not a person submitting to a polygraph examination must be provided food, etc., which are some of the examples you articulated in our meet and confer)*

*Mr. Tovar is not a defendant in this case, and therefore, it is unclear how the policies or procedures of the polygraph unit would be relevant to the claims against Defendant Officers. If you want us to consider agreeing to producing a 30(b)(6) witness in light of the new-non Monell rationale, then the City requires a 30(b)(6) notice which specifies the topics upon which Plaintiff seeks 30(b)(6) testimony.*

**Depositions date for Jaks and Rios** – During our June 13, 2025 meet and confer the City agreed to provide dates for Plaintiff to depose Officers Rios and Jaks. The City has not provided any dates. Please provide August dates for Plaintiff to complete these depositions. Alternatively, Plaintiff is willing to stipulate to certain facts in lieu of deposing Jaks and Rios. The proposed stipulations are as follows:

> **Stipulation for Thesodia Jaks:** The parties stipulate that in lieu of calling Officer Thesodia Jaks to testify at the civil trial or deposition in Abrego v. Guevara et al., 23-cv-01740 (N.D.Ill.), the parties will rely on Officer Jaks' January 17, 2003 testimony in the matter People of the State of Illinois v. Eruby Abrego, Case No. 99 CR 9739, wherein Officer Jaks testified that she was investigating a homicide on March 22, 1999 and she or her partner interviewed various witnesses including Ramon Torres and Julio Lugo. She also received a description of the shooter that day. The description she received described the shooter as male, dark Hispanic in a brown sweatsuit—a hoody, 5'7", 200 pounds, with curly and dark hair, heavyset with a mustache. The parties agree not to raise objections to the admissibility of this testimony.

> **Stipulation for Eduardo Rios:** The parties stipulate that in lieu of calling Officer Eduardo Rios to testify at the civil trial or deposition in Abrego v. Guevara et al., 23-cv-01740 (N.D.Ill.), the parties will rely on Officer Rios' September 20, 2004 testimony in the matter People of the State of Illinois v. Eruby Abrego, Case No. 99 CR 9739, wherein Officer Rios testified that on March 22, 1999, Officer Rios was assigned to protect the crime scene on March 22, 1999 as part of the Jose Garcia homicide investigation. Office Rios went to the crime scenes located at Milwaukee and Belmont and 2159 North Monticello. Officer Rios received a description of the shooter. The description described the shooter as wearing a black hoodie with black jacket, a male Hispanic, 19 to 22 years old, 5'9" with black hair and dark complexion. The parties agree not to raise objections to the admissibility of this testimony.

**CITY'S RESPONSE:**  *The City objects to Plaintiff's summary of Officer Jaks's testimony in People of the State of Illinois v. Eruby Abrego, Case No. 99 CR 9739 to the extent that Officer Jaks's testimony relates to a report containing a summary of what she learned at the scene and Plaintiff's summary above does not contain the entirety of her testimony. The City further objects to Plaintiff's summary of Officer Rios's testimony in People of the State of Illinois v. Eruby Abrego, Case No. 99 CR 9739 to the extent that Officer Rios testified twice in this case, on both January 17, 2003, and September 20, 2004.*

*Subject to and without waiving these objections, the City agrees to stipulate to the full trial testimony of Theososida Jaks provide on January 17, 2003, in People of the State of Illinois v. Eruby Abrego, Case No. 99 CR 9739, and both full trial testimonies provided by Eduardo Rios on January 17, 2003, and September 20, 2004, in People of the State of Illinois v. Eruby Abrego, Case No. 99 CR 9739.*

Sincerely,

Theresa Berousek Carney